**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**APPROXIMATELY $6,396,531.56 IN U.S. CURRENCY SEIZED FROM ACCOUNT NO. 898156399068 AT BANK OF AMERICA, N.A. IN THE NAME OF CRC MANAGEMENT, CORP., and**

**APPROXIMATELY $567,398.59 IN U.S. CURRENCY SEIZED FROM ACCOUNT NO. 898158830716 AT BANK OF AMERICA, N.A. IN THE NAME OF CRC MANAGEMENT, CORP.**

**Defendants *In Rem*.**

# VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, the United States of America, by and through its undersigned counsel, alleges as follows:

## I. NATURE OF THE ACTION

1. This is a civil action *in rem*, pursuant to 18 U.S.C. § 981(a)(1)(C) and the procedures set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Federal Rules of Civil Procedure, to forfeit seized funds, more fully described as (collectively, the "Defendant Assets"):

(i) Approximately [1] $6,396,531.56 in U.S. currency seized from account no. 898156399068 at Bank of America, N.A. in the name of CRC Management Corp. ("Account 9068"), and

(ii) Approximately $567,398.59 in U.S. currency seized from account no. 898158830716 at Bank of America, N.A. in the name of CRC Management Corp. ("Account 0716").

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this subject matter. *See* 28 U.S.C. §§ 1345, 1355(a); 18 U.S.C. § 981(a)(1).

3. This Court has *in rem* jurisdiction over the Defendant Assets. *See* 28 U.S.C. §§ 1345, 1355(b).

4. Venue for this action is proper in this District because acts or omissions giving rise to the forfeiture occurred in the Southern District of Florida, and because this is the same District where the Defendant Assets were brought upon seizure. *See* 28 U.S.C. §§ 1355(b)(1), 1395; 18 U.S.C. § 981(h).

## III. FACTUAL ALLEGATIONS

At all times material to this Action:

### A. The Medicare Program

5. The Medicare Program ("Medicare") was a federal health care program that provided free or below-cost health care benefits to individuals who are 65 years of age or older or disabled.

6. The United States Department of Health and Human Services, through its agency,

[1] All dates and amounts referenced in this Verified Complaint are approximate.

the Center for Mediare and Medicaid Services ("CMS"), oversaw and administered Medicare.

7. Individuals who received benefits under Medicare were commonly referred to as "Medicare beneficiaries."

8. Medicare was a "health care benefit program," as defined by 18 U.S.C. § 24(b).

9. Medicare was subdivided into four parts: hospital insurance (Part A); medical insurance (Part B); Medicare Advantage (Part C); and prescription drug benefits (Part D).

10. Medicare Part B covered, among other things, skin substitutes, skin grafts, and surgical dressings. According to the CMS website, CMS.gov, Amnioamp-MP falls under "Skin Substitutes."

11. Medicare claims for Part B items and services were processed and paid by Medicare Administrative Contractors ("MAC[s]"), which contracted with CMS to administer parts of Medicare in specific jurisdictions.

12. First Coast Service Options, Inc. was the MAC that covered Florida.

13. Health care providers seeking to bill Medicare for the cost of related benefits, items, and services were required to apply for and receive a "provider number." As part of the enrollment application, the provider agreed to abide by Medicare's policies, procedures, rules and regulations governing reimbursement.

14. Providers with a Medicare provider number could file claims with Medicare to obtain reimbursement for services provided on behalf of Medicare beneficiaries.

15. Providers were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

16. To receive payment for a covered service from Medicare, providers had to submit a claim, either electronically or using a form, to the MAC. The claim had to contain the required

information, including the provider's identifying information such as a Medicare-assigned Provider Transaction Access Number, the patient's information, the services rendered, the name of the provider who rendered or provided the billed-for item or service, the name of the beneficiary, a medical diagnosis, the date the billed-for service was rendered or the items was provided, and the type of service rendered and/or item provided.

17. Providers could only submit reimbursement claims to Medicare for items provided and/or services rendered that were reasonable and medically necessary.

18. Reimbursement payments under Mediare were often made directly to a provider for the goods or services, rather than to a Medicare beneficiary.

19. Medicare sent reimbursement payments directly to a provider's financial institution whether claims were filed electronically or on paper. Medicare required all providers to submit an electronic funds transfer agreement and a voided check or letter from their financial institution with their enrollment application to receive payments electronically.

**B. <u>CRC Management, Corp.</u>**

20. CRC Management, Corp. ("CRC Management") was an enrolled Medicare provider that purportedly provided services through Medicare Part B to Medicare beneficiaries.

21. CRC Management was a Florida corporation located in North Miami Beach, Florida, which is within the Southern District of Florida.

22. CRC Management's Bank of America Account 9068 was opened on or about October 21, 2024, using an address at CRC Management's purported office in North Miami Beach.

23. CRC Management's Bank of America Account 0716 was opened on or about February 7, 2025, using that same purported office in North Miami Beach.

24. Co-conspirators submitted and caused CRC Management to submit false and

fraudulent claims to Medicare totaling $10,538,950.00 in U.S. currency for Amnioamp-MP skin substitutes that were medically unnecessary and not provided as represented.

25. Alleged beneficiaries of CRC Management's Medicare claims stated in interviews with law enforcement agents that they did not receive, request, or need any of the Amnioamp-MP that was billed for them and had never heard of CRC Management.

26. The alleged provider and prescriber of Amnioamp-MP identified in CRC Management's Medicare claims stated in an interview with law enforcement agents that he or she had never heard of CRC Management, and he or she had not prescribed Amnioamp-MP to the identified beneficiaries. This provider stated that the identified Medicare beneficiaries were not his or her patients. This provider's prescriptions accounted for 100% CRC Management's total billed Medicare claims.

27. On March 3, 2025, law enforcement agents also visited CRC Management's purported office in North Miami Beach, which they found was another business, and CRC Management was not located there. There were no signs indicating CRC Management was an active business.

### C. <u>Defendant Assets</u>

*i. Account 9068*

28. From February 4, 2025, through March 6, 2025, as a result of claims for reimbursements, Medicare deposited $7,164,619.62 in U.S. currency into Account 9068 in the name of CRC Management.

29. This $7,164,619.62 in U.S. currency constituted almost all of Account 9068's total deposits during that time period. There was only one non-Medicare proceeds deposit of $60 cash

into Account 9068 account between February 4, 2025, through March 6, 2025.

30. There were no additional deposits into Account 9068 after March 6, 2025.

31. Analysis of Account 9068 revealed that $6,958,827.61 in U.S. currency on deposit on or about March 12, 2025, which was entire balance of the account at the time, was traceable to Medicare reimbursements.

*ii. Account 0716*

32. On or about February 7, 2025, Account 0716, a savings account also in the name of CRC Management, was opened with two transfers from Account 9068, totaling $5,100.

33. Before those transfers on or about February 7, 2025, Account 0716 had a zero balance.

34. On or about March 12, 2025, Account 9068 transferred approximately $562,296.05 to Account 0716.

35. Bank statements reflect that Account 0716 earned $2.54 in interest between February 7, 2025, and March 31, 2025.

36. Analysis of Account 0716 traced all funds on deposit to Medicare reimbursements.

*iii. Seizure Warrant*

37. On or about April 7, 2025, law enforcement agents served a federal seizure warrant on Bank of America N.A. for all funds on deposit in the following Bank of America Accounts: Account no. 898156399068 in the name of CRC Management, Corp., and Account no. 898158830716 in the name of CRC Management, Corp. *See* Case No. 25-MJ-02659-Sanchez (S.D. Fla.).

38. Pursuant to that seizure warrant, Bank of America remitted a total of $6,963,930.15 in U.S. currency, comprised of $6,396,531.56 from Account 9068 and $567,398.59 from Account

0716.

39. The $6,396,531.56 in U.S. currency from Account 9068 and $567,398.59 in U.S. currency from Account 0716, which constitute the Defendant Assets, were seized by the Federal Bureau of Investigation.

## IV. BASIS FOR FORFEITURE

40. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a specified unlawful activity or a conspiracy to commit such offense is subject to civil forfeiture.

41. Pursuant to 18 U.S.C. § 1956(c)(7)(F), any act or activity constituting an offense involving a "Federal health care offense" constitutes a specified unlawful activity.

42. Pursuant to 18 U.S.C. § 1347, health care fraud is a "Federal health care offense."

### FIRST CLAIM
**Proceeds of Health Care Fraud**
**18 U.S.C. § 981(a)(1)(C)**

43. The factual allegations in paragraphs 1 through 39 are re-alleged and incorporated by reference as if fully set forth herein.

44. As set forth above, the Defendant Assets are property that constitute or are derived from proceeds traceable to health care fraud in violation of 18 U.S.C. § 1347, which is a specified unlawful activity pursuant to 18 U.S.C. § 1956(c)(7)(F).

45. Accordingly, the Defendant Assets are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

**WHEREFORE**, Plaintiff, the United States of America, requests that the Clerk of the Court issue a warrant for the arrest *in rem* of the Defendant Assets; that notice of this action be provided to persons known or thought to have an interest in or right against the Defendant Assets;

that the Defendant Assets be forfeited and condemned to the United States of America; and for such other and further relief as may be deemed just, necessary and proper.

Respectfully submitted,

**JASON A. REDING QUIÑONES**
**UNITED STATES ATTORNEY**

By: *s/ G. Raemy Charest-Turken*
Gabrielle Raemy Charest-Turken
Assistant United States Attorney
Florida Bar No. 15939
99 N.E. 4th Street, 7th Floor
Miami FL, 33132-2111
Telephone: (305) 961-9365
E-mail: Gabrielle.Charest-Turken@usdoj.gov

**VERIFICATION**

I, Anthony Lam, hereby verify and declare, under penalty of perjury, that I am a Special Agent with the United States Department of Health and Human Services, Office of Inspector General, Office of Investigations, and that the foregoing factual allegations are true and correct to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement agents, as well as my investigation of this case, together with others, as a Special Agent of HHS-OIG.

Executed on this 17 of June 2026.

Anthony Lam

Anthony Lam
Special Agent, United States Department of Health and Human Services, Office of Inspector General